IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

SOCIETY OF PROFESSIONAL
ENGINEERING EMPLOYEES IN
AEROSPACE, LOCAL 2001,
INTERNATIONAL FEDERATION OF
PROFESSIONAL AND TECHNICAL
EMPLOYEES,

          Plaintiff,

          vs.                                Case No. 12-1180-JTM

SPIRIT AEROSYSTEMS, INC,
          Defendant.

MEMORANDUM AND ORDER

This action is before the court on competing motions for summary judgment by Spirit Aerosystems, Inc., and one of its unions, the Society of Professional Engineering Employees in Aerospace, Local 2001 International Federation of Professional and Technical Employees ("SPEEA"), as to whether the Collective Bargaining Agreement (CBA) between the parties provides for arbitration as to disputes over the Employee Performance Evaluation Process. The court finds that the CBA does not provide for arbitration as to that subject.

*Findings of Fact*

Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In considering a motion for summary judgment, the court must examine all evidence in a light most favorable to the opposing party. *McKenzie v. Mercy Hospital*, 854 F.2d 365, 367 (10th Cir. 1988). The party moving for summary judgment must demonstrate its entitlement to summary judgment beyond a reasonable doubt. *Ellis v. El Paso Natural Gas Co.*, 754 F.2d 884, 885 (10th Cir. 1985). The moving party need not disprove plaintiff's claim; it need only establish that the factual allegations have no legal significance. *Dayton Hudson Corp. v. Macerich Real Estate Co.*, 812 F.2d 1319, 1323 (10th Cir. 1987).

In resisting a motion for summary judgment, the opposing party may not rely upon mere allegations or denials contained in its pleadings or briefs. Rather, the nonmoving party must come forward with specific facts showing the presence of a genuine issue of material fact for trial and significant probative evidence supporting the allegation. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). Once the moving party has carried its burden under Rule 56(c), the party opposing summary judgment must do more than simply show there is some metaphysical doubt as to the material facts. "In the language of the Rule, the nonmoving party must come forward with 'specific facts showing that there is a **genuine issue for trial**.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed.R.Civ.P. 56(e)) (emphasis in *Matsushita*). One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and the rule should be interpreted in a way that allows it to accomplish this purpose. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

Plaintiff Society of Professional Engineering Employees in Aerospace, Local 2001 International Federation of Professional and Technical Employees ("SPEEA") is the certified bargaining representative of two bargaining units at Spirit, each representing a separate group of employees: the Wichita Engineering Unit ("WEU") and the Wichita Technical and Professional Unit ("WTPU").

Spirit AeroSystems, Inc. manufactures commercial aircraft components in its Sedgwick County, Kansas, facilities. Spirit purchased those facilities from The Boeing Company in 2005, hiring most of the former Boeing employees who had been working in those facilities.

As of 2005, SPEEA had two Collective Bargaining Agreements (one for each bargaining unit). The "Grievance Procedure and Arbitration" provision in both of SPEEA's CBAs with Boeing stated in part:

> **Section 3.1 Grievance and Arbitration Procedure.** Grievances arising between the Company and its employees subject to this Agreement, or between the Company and the Union, with respect to the interpretation or application of any of the terms of this Agreement shall be settled according to the following procedure….
>
> **Section 3.3 Union Versus Company and Company Versus Union Grievances.** Grievances which the Union may have against the Company or the Company may have against the Union, limited as aforesaid to matters dealing with the interpretation or application of terms of this Agreement, shall be handled as follows: [the submission of the grievance to the appropriate company or union representative, as the case may be, followed, if no settlement is reached, by a written request for arbitration as described in the grievance procedure].

Section 3.6 of the SPEEA-Boeing CBAs addressed "Rules of Procedure" for arbitration proceedings, but they did not discuss an arbitrator's authority to hear or decide more than one grievance in any one arbitration proceeding.

Following Spirit's acquisition of the former Boeing facilities, Spirit and SPEEA entered into a CBA covering WEU-represented employees, effective July 11, 2005, and later

3

entered into a another CBA for those workers, effective October 8, 2009, and still in effect today.

Spirit and SPEEA separately entered into a CBA covering the WTPU effective July 11, 2005. A new CBA covering the WTPU workers took effect on December 12, 2011, and still in effect today.

Article 2 of the 2005 Spirit-WEU CBA:

### ARTICLE 2
### RIGHTS OF MANAGEMENT

**Section 2.1 Management of Company**. Except as expressly modified or restricted by a specific provision of this Agreement, all statutory, common law, and inherent managerial rights, prerogatives, and functions are retained and vested exclusively in the Company, including, but not limited to, the rights in accordance with its sole and exclusive judgment and discretion to: establish reasonable rules and regulations; manage the operation; direct the workforce; promote, demote, transfer and/or assign its employees; discipline (up to and including discharge) employees for just cause; determine the number of employees to be employed; and hire employees, determine their qualifications and assign their work and work locations.

Article 3 of the 2005 Spirit-WEU CBA states:

### ARTICLE 3
### DETERMINATION OF DISPUTES

**Section 3.1 Establishment of Procedure.** Definition: The term "grievance" shall mean a written complaint involving the interpretation or application of this Agreement....

**Section 3.2 Just Cause Requirement**.... For grievances involving layoff, discharge, suspension, or involuntary resignation employees shall have the right to begin the grievance process at Step 3 of this procedure ....

**Section 3.3 Grievance Steps**.

> **Step 1 – Oral.** Any employee having a complaint shall first bring it to the attention of his immediate supervisor.... The decision in this Step will be final and binding unless ... the employee proceeds to Step 2 of this procedure.

> **Step 2 - Documented.** Any complaint not resolved in Step 1 – Oral, must be documented and signed by the employee ... and submitted to the employee's supervisor ....

>**Step 3 – Pre-Arbitration.** The employee's managers' decision will be final and binding unless … the grievance is appealed in writing to Human Resources….
>
>**Step 4 – Arbitration.** The decision of Human Resources will be final and binding unless ... the grievance is appealed in writing to arbitration. Such appeal shall be directed to Human Resources….

**Section 3.4 Agreement Not To Be Altered.** The jurisdiction and authority of this arbitrator shall be confined exclusively to the interpretation of the explicit provision or provisions of this Agreement at issue between the Union and the Company. The arbitrator shall have no authority to add to, detract from, alter, amend or modify any provision of this Agreement, or impose on any party a limitation or obligation not explicitly provided for in this Agreement. The arbitrator shall have no authority or power to limit or impair any right that Article 2 of this Agreement reserves to Management as a Management prerogative. The arbitrator shall not consider as a past practice any other event or policy that occurred before the Effective Date of this Agreement….

**Section 3.6 Arbitration Proceeding.** Unless otherwise agreed by the parties, each grievance appealed to arbitration shall be the subject of a separate and distinct arbitration hearing and decision, and no arbitrator shall be selected by the parties to hear or decide more than one (1) grievance in any one (1) arbitration proceeding….

Article 4 of the 2005 Spirit-WEU CBA states in part:

### ARTICLE 4
### EMPLOYEE PERFORMANCE

**Section 4.1 Employee Performance Process**…. The Company will establish, modify and continuously improve the employee performance and evaluation process. The process will provide a documented means for the employee and the manager to assess performance and an option to build Employee Improvement Action Plans ….

**4.1(b).** It is expected that occasional disagreement over Performance Evaluation content will be resolved at the lowest possible level. A skip-level manager may be involved in the process for this purpose; however, in those few instances where such resolution is not possible, the Union may involve the Human Resource Director (or designee).

The 2009 Spirit-WEU CBA and the 2005 Spirit-WTPU CBA contain identical language. This language also appears in the 2011 Spirit-WTPU CBA, except that the term "Employee Improvement Action Plans" is replaced by the term "Individual Development Plans (IDP)."

Section 15.1(d) of the 2005 Spirit-WEU CBA states in part:

> The parties further agree that the Company, at its option, may file a grievance alleging a violation of the no strike obligation of this article and the Union, at its option, may file a grievance alleging violation of the no-lockout obligation at Step 3 – Pre-Arbitration of the Grievance Procedure in Article 3.3.

The 2009 Spirit-WEU CBA and the 2005 Spirit-WTPU CBA contain identical language. The language in the 2011 Spirit-WTPU CBA is identical, except that the cross-reference to "Article 3.3" mistakenly references "Article 3.2."

Except as provided in Sections 3.2 and 15.1(d) of the SPEEA contracts with Spirit, none of these contracts authorize a "Step 3 grievance," i.e., a grievance initiated at Step 3 of the contractual dispute-resolution process described in Article 3.

Absent from all of the CBAs is any provision for a SPEEA grievance against Spirit, except as to strike and lockout disputes under Sec. 15.1(d), such as the provision both the WEU and WTPU previously had negotiated in its earlier Boeing contracts.

Spirit's contracts with SPEEA may be compared with its CBAs with other unions. The CBA between Spirit and the International Association of Machinists and Aerospace Workers, AFL-CIO ("IAM") provides:

> **Section 7.1 Establishment of Grievance and Arbitration Procedure**. Grievances or complaints arising between the Company and its employees subject to this Agreement, or the Company and the Union, with respect to the interpretation or application of any of the terms of this Agreement, shall be settled according to the following procedure....
>
> **Section 7.4. Union Versus Company and Company Versus Union Grievances**. In the case of any grievance which the Union may have against the Company or the Company may have against the Union, the processing of such grievance shall begin with Step 3 and shall be limited to matters dealing with the interpretation or application of terms of this Agreement.

The CBA between Spirit and the International Brotherhood of Electrical Workers, AFL-CIO ("IBEW") provides:

> **Section 7.3. Method of Handling Complaints and Grievances**.... In addition [to individual employee grievances denied by the Company at Step 1], any grievance which the Company may have against the Union or the Union may

> have against the Company shall be submitted in Step 2 of the [three-step] grievance procedure.... Should the Director of Labor Relations, or his delegate, and the Business Manager, or his delegate, fail to reach a settlement; the grievance may be submitted to an arbiter for prompt hearing ....

Spirit maintains an employee evaluation process, as a part of which, Spirit managers annually rate their employees' performances. As a part of this process, Spirit managers identify, coach, and, as appropriate, discipline underperforming employees.

On February 1, 2012, Bob Brewer, SPEEA Midwest Director, sent a letter to Adam Pogue, Spirit's Vice President Labor Relations & Workforce Strategies, regarding "Step 3 Grievance – Article 4 of the WTPU and WEU Collective Bargaining Agreements." In that letter, SPEEA stated it was "filing Step 3 grievances for violations of Article 4, Performance Management, for both the Wichita Technical & Professional Unit (WTPU) and the Wichita Engineering Unit (WEU)." Specifically, SPEEA alleged that Spirit unilaterally "re-calibrate[d]" the employee evaluation process in November 2011. SPEEA requested that Spirit contact the union "to schedule a Step 3 meeting at your earliest convenience."

Brewer sent Pogue another letter on February 8, 2012, entitled "Step 3 Grievance – Performance Improvement Process." Brewer stated that SPEEA sought "to grieve the Performance Improvement Process (PIP) currently in use at Spirit." Specifically, SPEEA challenged (a) a decision Spirit allegedly made "at some point" in 2011 "to terminate some employees based on the outcome of the PIP" and (b) Spirit's alleged introduction of changes to the employee performance process "without bargaining with SPEEA." SPEEA "request[ed] a Step 3 hearing as soon as possible" to address the issues raised in its February 8 letter.

Pogue responded on February 23, 2012, denying the grievances on multiple grounds.

First, he stated that the union's complaints were outside the scope of the parties' arbitration agreement because Sections 3.2 and 15.1(d) of the CBAs, the contractual

7

provisions authorizing Step-3 grievances, do not "provide for the filing of a Step 3 grievance" regarding the employee performance and evaluation process. Second, Section 4.1(b) of the parties' agreements expressly "provides a more informal method for addressing such disagreements." Third, SPEEA's complaints lacked merit because neither Spirit's employee performance and evaluation process nor any alleged changes violated the CBAs.

Brewer wrote to Pogue on February 29, 2012, stating that the union "demand[ed] arbitration" of the complaints of February 1 and 8. Brewer argued that its grievances could be filed at Step 3, claiming any reference to Section 3.2 of the CBAs "is misplaced" because it only "deals with grievances over discipline and *has nothing to do with grievances that challenge an act of management* (the HR Department) well above the front line supervisors." (Emphasis added). He further stated, "It would have been a futile waste of time to discuss this matter with any of those managers."

Brewer did not address Section 4.1(b)'s limitation on the scope of the parties' arbitration agreement.

On April 6, 2012, Spirit sent SPEEA a letter to address the issue, reiterating its position that "Section 4.1(b) removes disputes regarding [the employee performance and evaluation] processes from the grievance/arbitration mechanism" and that the CBAs do not "allow the Union to file a Step-3 Union-Company grievance" on performance-management issues.

SPEEA subsequently filed this lawsuit, asking the Court to force Spirit to arbitrate the grievances.

On February 13, 2012, SPEEA filed two unfair labor practice charges against Spirit with the National Labor Relations Board, alleging as to both bargaining units that Spirit "has modified working conditions related to a performance improvement process for the professional employees without negotiating with SPEEA."

On March 27, 2012, SPEEA distributed a memorandum to the "Spirit Aerosystem [sic] Supplier & Customer Network," that is, to Spirit's suppliers and customers. After referring its readers to newspaper articles describing its complaints, the memorandum warned: "Spirit is now facing Unfair Labor Practice charges before the NLRB and a Class-Action grievance that could result in significant financial award against the company."

In letters dated April 27, 2012, following the NLRB's investigation of SPEEA's ULPs, the NLRB notified Spirit that it had approved SPEEA's request to withdraw its charges.

*Conclusions of Law*

In support of its argument that the employee performance evaluation system is subject to arbitration, the union correctly notes the strong federal preference for resolution of disputes by arbitration. However, this arbitrability of a disagreement, i.e., whether the parties indeed agreed to arbitrate a given subject, remains an issue for the court. *AT&T Techs. v. Communs. Workers of Am.*, 475 U.S. 643, 649 (1986) ("[u]nless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator"). Thus, the court, not an arbitrator, "must resolve any issue that calls into question the ... applicability of [a] specific arbitration clause." *Granite Rock Co. v. International Bhd. of Teamsters*, 130 S.C.t. 2847, 2856.

Applying that standard here, the court finds there are two independent reasons for finding that the broad, class-wide grievance between company and union were not subjected to arbitration under the relevant CBAs.

First, the explicit language of Article 3 creates a grievance procedure for specific, individual employees to challenge "a layoff, discharge, suspension, or involuntary resignation." (CBA, Section 3.2). The individualized nature of the grievance-arbitration procedure under Article 3 is confirmed in Section 3.6 — it permits arbitration of

9

grievances, but each grievance must be considered on an individualized basis in "a separate and distinct arbitration hearing." That is, the CBA precludes the arbitration of broad disputes between union and company involving hundreds or thousands of employees.

As a limited exception to Article 3's restriction of the grievance procedure to individual workers, Section 15.1(d) of the CBA permits the union to issue a grievance, but only as to an alleged violation "of the no-lockout obligation." Thus, broad, class-wide issues between union and company may indeed be subjected to Step 3 grievances, and hence to arbitration, but only if they involve a dispute over a lockout. The clear implication is that other class-wide disputes between union and company fall outside of the agreement to arbitrate. This result is consistent with decisions involving similar factual circumstances. *See, e.g., Jim Walter Res., Inc. v. United Mine Workers of Am.*, 663 F.3d 1322, 1328 (11th Cir. 2011) ("employee oriented grievance machinery in the parties' contract qualifies and limits the universe of claims and grievances subject to arbitration, and the language negates the intention that the employer's claim for damages must be submitted to arbitration."); *Markel Elec. Products v. United Elec., Radio & Machine Workers of Am.*, 202 F.2d 435 (1953) (where grievance procedure was restricted to employees, broader company-union issues were not arbitrable).

Second, even if the court were to somehow construe Article 3 to permit general class-wide grievances between union and company, the more specific provisions of Article 4 prevent the application of such an interpretation for disputes involving the employee performance plans. Article 4 explicitly governs the creation and application of such performance plans, and Article 4 has an entirely separate structure for resolving disputes as to such plans, a structure outside the grievance-arbitration process of Article 3. Specifically, the CBA recognizes as "expected" the "occasional disagreement over Performance Evaluation content," and provides a separate procedure under which disputes

would be "resolved at the lowest possible level," including the involvement of a skip-level manager, but that the parties may appeal to the Spirit Human Resource Director. Article 4 excludes any provision for arbitration of performance plan disputes. *See Teamsters Local Union No. 783 v. Anheuser-Busch, Inc.*, 626 F.3d 256, 262-63 (6th Cir. 2010) (existence of an alternative, non-arbitration dispute resolution process supports finding of nonarbitrability). The court finds that, read in context, the language of Articles 3 and 4 provide positive assurance that Spirit and SPEEA did not intend to arbitrate disputes over the employee performance evaluation process. *See Lehigh Portland Cement Co. v. Cement, Lime, Gypsum, and Allied Workers Div.*, 849 F.2d 820, 827 (3d Cir. 1988).

IT IS ACCORDINGLY ORDERED this 29th day of November, 2012, that the plaintiff's Motion for Summary Judgment (Dkt. 14) is denied; the defendant's Motion for Summary Judgment (Dkt. 9) is granted.

s/ J. Thomas Marten
J. THOMAS MARTEN, JUDGE